UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL L. DANGERFIELD,

                      Plaintiff,

v.                                                  Case No. 23-cv-1413-pp

VIRGINIA H. TRZEBIATOWSKI
and ELLYN M. BAKER,

                      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE**

Darnell L. Dangerfield, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants misdiagnosed him as diabetic. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

1

On November 2, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $13.74. Dkt. No. 6. The court received that fee on December 1, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II.  Screening the Complaint

### A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The defendant was incarcerated at Green Bay Correctional during the events he describes in the complaint, and the defendants were employed there. The complaint alleges that on October 14, 2022, the plaintiff "requested to be tested for []diabetic due to [his] family history of having diabete[s]." Dkt. No. 1 at 2. It alleges that on November 21, 2022, the plaintiff "was called over to HSU [Health Services Unit] for an order testing for diabete[s] at health care provider Virginia H. Trzebiatowski." Id. The complaint asserts that the plaintiff "took the test" that day, and Nurse Ellyn M. Baker (a diabetic specialist) later informed

him that he had type-2 diabetes. Id. The plaintiff says he took "insulin semglee [sic] 10cc" once per day and checked his blood-sugar level "by poking holes in [his] fingers." Id. He says he "started doing this immediately," and he "was also told to recorded [sic] [his] blood-sugar levels and [he] was also shown how to (shoot up) the 10cc of insulin." Id. The plaintiff says that starting "Nov[ember] 11, 2022 [sic]," he injected himself with 10cc of insulin every night. Id.

The plaintiff alleges that on December 15, 2022, another nurse at Green Bay named Amy Potapenko (not a defendant) told him "to stop all activities," including testing his blood-sugar with finger pricks and injecting insulin, because he is not diabetic. Id. He says Potapenko told him she did "not know why the nurse that seen [sic] [him] do [sic] a full examination into the testing whereas she would had [sic] known right then that [he] was not a diabetic." Id. The plaintiff says that as soon as he stopped taking insulin and checking his blood-sugar level, he "began to fill [sic] light-head[ed], and sick from taken [sic] the (insulin semglee) 10cc." Id. at 2–3. The plaintiff says this situation "cause[d] [him] to become confused and becoming [sic] very depressed for [he] was not understanding why [he] was feeling sick now all the time and why [he] was misdiagnosised [sic]." Id. at 3. He alleges that he felt "like [he] was or might pass away and die as [he] was thinking sooner or later that [he] would from the disease." Id. He also says that he reached out to the psychological services unit about his misdiagnosis. Id.

The plaintiff alleges that he suffered discomfort, headaches, stomach pains and "aching feets [sic]" from taking the insulin, and he says he is "still

4
Case 2:23-cv-01413-PP   Filed 12/27/23   Page 4 of 10   Document 10

having side [e]ffects" today. Id. He asserts that the defendants "had placed [his] live[l]ihood at (risk) by telling [him] and diagnosing [him] with diabetic [*sic*] when [he is] not a diabet[ic] at all." Id. He says this misdiagnosis "could had [*sic*] been very fatal if [he] would had [*sic*] continue to inject this insulin for more weeks than [he] had already done." Id. The plaintiff alleges that "both defendants had [his] lab results and was looking over them the right way and they would not had [*sic*] misdiagnosed [him]." Id. He reiterates that "this medical error could had [*sic*] been very fatal and therefore should not every [*sic*] happen at all."

The plaintiff claims that the defendants' "negligence on the[ir] behave [*sic*] is very unacceptable and cannot be undone." Id. at 4. He says that an institutional complaint examiner "affirmed" his complaint "that the defendants had misdiagnosing [*sic*] [him]." Id. He attached the report from an institutional complaint examiner who recommended affirming the plaintiff's complaint about his misdiagnosis. Dkt. No. 1-1 at 1. The Office of the Secretary also affirmed the plaintiff's appeal of the complaint examiner's decision. Id. at 2.

The plaintiff seeks $2,000 in damages for "each day [he] had to poke [him]self and injecting [*sic*] [him]self," which he says he did for twenty-five days. Dkt. No. 1 at 4. He seeks an additional $50,000 in damages "for the pain [and] suffering from the damaged [*sic*] that [he] suffer from being depress[ed] from the misdiagnosed [*sic*] that the defendants had put [him] in." Id.

C.  Analysis

The court reviews under the Eighth Amendment the plaintiff's allegations about the medical treatment he received. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The complaint alleges that defendants Trzebiatowski and Baker misdiagnosed the plaintiff with diabetes and prescribed him insulin, which he took for about three weeks before another medical provider discovered the mistaken diagnosis and advised him to stop taking the medication. Type-2 diabetes is a serious medical condition "that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). The plaintiff's alleged misdiagnosis as diabetic and the physical harm that he says resulted from that misdiagnosis

"constitutes a serious medical condition under the objective deliberate indifference to medical needs factor." Maya v. Illinois Dep't of Corr., No. 17-CV-0546-NJR, 2017 WL 3491961, at *6 (S.D. Ill. Aug. 14, 2017). The court finds that the allegations in the complaint satisfy the objective component of inadequate medical care.

But the plaintiff's allegations do not satisfy the subjective component. The plaintiff alleges that he saw Trzebiatowski for a diabetes test and that Baker later provided him his results, which incorrectly diagnosed him as having type-2 diabetes. The plaintiff does not allege that either defendant told him was diabetic despite knowing that he was not. Nor does he allege that the defendants recklessly conducted the diabetes test. He says only that they made a "medical error" and told him he had diabetes, perhaps because they misread his "lab results." These allegations suggest that the defendants may have erred or committed malpractice during the plaintiff's diabetes test, which resulted in the misdiagnosis. But neither negligence nor medical malpractice leading to an error in diagnosing a medical condition amounts to deliberate indifference. Estelle, 429 U.S. at 106; see Grant v. Heidorn, 802 F. App'x 200, 205 (7th Cir. 2020) (citing Cesal v. Moats, 851 F.3d 714, 724 (7th Cir. 2017)) ("[F]ailing to correctly diagnose a condition is evidence of negligence, not deliberate [in]difference."); Maya, 2017 WL 3491961, at *7 (citing Williams v. Nickleson, 84 F. App'x 656, 658 (7th Cir. 2003)) ("Mere misdiagnosis of a medical condition is an error that does not rise to the level of deliberate indifference.").

Because the events the plaintiff describes in the complaint do not amount to deliberate indifference, he has not stated a claim for relief under the Eighth Amendment. The plaintiff may be able to state a claim of negligence or medical malpractice under state law. In some circumstances, the court may exercise supplemental jurisdiction over state-law claims that are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). But because the court is dismissing the plaintiff's only putative federal claim, it will not exercise supplemental jurisdiction over any state-law claims. See 28 U.S.C. §1367(c)(3). If the plaintiff wishes to pursue claims of negligence or malpractice against the defendants, he must do so in state court.

District courts generally give civil plaintiffs at least one opportunity to amend their pleadings, but the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's complaint is thorough in its allegations of the facts surrounding this claim. The court finds that amendment would be futile and will not allow the plaintiff to file an amended complaint.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the complaint fails to state a claim. The court will enter judgment accordingly.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$336.26** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Green Bay Correctional Institution.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R.

App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court.* <u>See</u> Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. <u>Id.</u>

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of December, 2023.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**